HERITAGE COUNTY BANK AND TRUST COMPANY, as Ex'r of the Estate of Willis T. Howell, Plaintiff-Appellant, v. STATE BANK OF HAMMOND et al., Defendants-Appellees.

First District (6th Division) No. 1—89—1811

Opinion filed May 18, 1990.

Bruce M. Bozich, of South Holland (Joseph D. Keenan III, of counsel), for appellant.

Kelly, Olson, Pusch, Rogan & Siepker, of Chicago (James M. Rogan, Jill A. Dougherty, and John C. Sciaccotta, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff Heritage County Bank & Trust (Heritage Bank), as executor to the estate of Willis T. Howell, Sr. (Howell Sr.), brought action to quiet title to a parcel of real estate. Both Heritage Bank and defendant Joe Howell asserted competing claims to title based on a land trust agreement between the decedent and defendant State Bank of Hammond, Illinois (Trustee Bank). Subsequently an intervening complaint and a counterclaim were filed. Heritage Bank and Joe Howell then filed cross-motions for summary judgment. The circuit court denied plaintiff's motion and granted summary judgment for defendant Joe Howell. Jurisdiction is asserted pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

On appeal, Heritage argues that: (1) Howell Sr. acquired a vested, indefeasible right to the beneficial interest in the trust *res* after 20 years pursuant to language in the trust agreement stating that property which remains after 20 years will be sold and the proceeds di-

vided among those entitled under the agreement; and (2) Howell Sr. acquired an equitable right to legal title to the subject property when the trustee failed to sell the property as required under the trust agreement within a reasonable time after the agreed on date. We affirm.

The undisputed facts are these. On February 11, 1954, Howell Sr. entered into a trust agreement with the Trustee Bank and conveyed a parcel of land as the trust *res*. Under terms of the trust, Howell Sr. was sole beneficiary until his death and his brother, defendant Joe Howell, was contingent beneficiary. The trust agreement provided in part:

> "If any property remains in this trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement."

The trust did not specify any other expiration or termination date or event. During the next 20 years, the land remained in the trust *res* and the trust terms were not amended in writing.

After the 20-year period expired in February of 1974, the Trustee Bank did not attempt to sell the land and Howell Sr. did not attempt to renew the agreement in writing, as required by the trust. Howell Sr. did continue to pay trust fees to the Trustee Bank until 1978. Howell Sr. died testate on December 17, 1984, leaving his estate to his children Betty Ann Howell and Willis T. Howell, Jr.

On June 17, 1988, the Trustee Bank conveyed legal title of the property to Joe Howell at his request. On December 21, 1988, plaintiff Heritage Bank filed its complaint to quiet title. In granting Joe Howell's motion for summary judgment, the court held: "[T]he settlor manifested [the] intention to have this trust continue in its original terms and the conduct of everyone seems to indicate that."

■■ The same rules that govern the construction of wills apply to the construction of trust instruments. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198, 1201.) In construing a trust agreement, the court must ascertain the intent of the settlor. (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 450, 427 N.E.2d 1217, 1221.) Furthermore:

> " 'Such intention is determined in two ways: one by ascertaining the testator's actual meaning from the words employed, to which all rules of construction give way, and the other by finding his presumed intention by the application of rules of construction where the meaning is obscure, doubtful, or uncertain. Resort to such rules is necessary, however, only where the ac-

tual intent cannot be ascertained. If the intention may be gathered from the language of the will without reference to rules of construction, there is no occasion to use them.' " *Trackman v. Ringer* (1988), 174 Ill. App. 3d 1093, 1098, 529 N.E.2d 647, 649, quoting *Wiener v. Severson* (1957), 11 Ill. 2d 347, 349, 143 N.E.2d 225.

I

Heritage claims that pursuant to the trust instrument, Howell Sr. acquired a vested, indefeasible beneficial interest in the trust premises after the expiration of 20 years because the trust provided that the property was to be sold and the proceeds distributed at that time.

■■ If the language of a trust specifies that the trust terminates and the proceeds should be distributed by a certain date or after a certain amount of time, then the beneficiaries are entitled to the *res* at the time specified. (*Friese v. Friese* (1940), 373 Ill. 216, 219-20, 25 N.E.2d 788, 790; *Yedor v. Chicago City Bank* (1941), 376 Ill. 121, 129, 33 N.E.2d 220, 224-25.) If a trust does not specify a termination point but directs that the *res* should be sold and the proceeds distributed after a certain time and this distribution does not occur, then the beneficiaries have a right to petition the court for distribution. *Breen v. Breen* (1952), 411 Ill. 206, 212-13, 103 N.E.2d 625, 628-29.

Heritage Bank cites these cases along with the language of the trust and concludes that the trust expired after 20 years. Heritage further cites *Wiener* (11 Ill. 2d 347, 143 N.E.2d 225), and *Eiche v. Illinois National Bank & Trust Co.* (1980), 84 Ill. App. 3d 535, 406 N.E.2d 210, to argue that Howell Sr.'s rights as a beneficiary were indefeasibly vested.

These two cases, however, are distinguishable. In *Wiener*, a testator left the residue of his estate in trust to pay income to his widow and incompetent son. After the survivor died, the trust was to "be immediately terminated and the trust estate herein *** distributed" equally to another son and a daughter or their issue. (*Wiener*, 11 Ill. 2d at 348, 143 N.E.2d at 226.) After the death of the two beneficiaries, but before distribution of the trust *res*, the daughter died leaving no issue. The *Wiener* court held that the trust had terminated when the beneficiaries died, which was also when the purpose of the trust had been fulfilled. Therefore, the daughter took at that time under the terms of the trust even though she did not survive until the distribution of the *res*. To rule otherwise would mean that important property rights would depend on the delay or diligence with which distribution is made. *Wiener*, 11 Ill. 2d at 349-53, 143 N.E.2d at 226-28.

In *Eiche* a settlor established a trust to pay taxes and expenses following her death. Income accumulating between the settlor's death and trust distribution was to be paid to John Eiche. The subsequent distribution included a gift of $10,000 to Julia Eiche or, if she died "before receiving her share," to her five named grandchildren. Taxes and expenses were fully paid on October 28, 1976, Julia Eiche died on December 9, and the trustee distributed her share to her grandchildren on December 28. Her estate sued the trustee. The court ruled in favor of the estate, finding that Julia Eiche's share had vested on October 28, after the purpose of the trust had been fulfilled. The court reasoned that the law favors early vesting and that vesting occurs when there is a right to distribution, not when the distribution is actually made. *Eiche*, 84 Ill. App. 3d at 537-38, 406 N.E.2d at 212.

■ The facts of *Breen* are similar to the ones here. In *Breen* settlors conveyed an apartment building to a trustee who was to manage it and divide the proceeds among the beneficiaries. The trust provided: "If any property remains in this trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among" the beneficiaries. (*Breen*, 411 Ill. at 208, 103 N.E.2d at 626.) Ten months after the 20-year period, some beneficiaries sued for partition. The court did not excuse the trustee for almost 10 month's delay. But, the court held, "the [trustee's] immediate failure to proceed to sale does not work a reconversion of the property giving [beneficiaries] an equitable interest entitling them to partition." (*Breen*, 411 Ill. at 212, 103 N.E.2d at 629.) Rather it gave the beneficiaries the right to apply to the court for orders compelling the trustee to sell and distribute the proceeds. *Breen*, 411 Ill. at 212-13, 103 N.E.2d at 629; see also *Smith v. Kelley* (1944), 387 Ill. 213, 226, 56 N.E.2d 360, 366.

Unlike in *Wiener* and *Eiche*, where the trust purpose had been fulfilled, the trust here did not terminate. This case involves a land trust with language identical to *Breen* directing the trustee to sell and distribute after 20 years. Unlike in *Breen*, however, the beneficiaries did not ask the trustees to act or petition the court to compel action.

Furthermore, the facts here do not persuade us to grant unprecedented equitable relief. Defendants filed cross-motions for summary judgment with no facts in dispute. Under the *Trackman* test, if the words of a trust are unambiguous, as all parties agree they are here, then the court must ascertain the meaning of a trust by looking at the words employed. Plaintiff argues that the language of the trust indicates that Howell Sr. intended that the trust should expire in 20 years. In fact, this language states only that the settlor empowered

the Trustee Bank to sell the property and distribute the proceeds at that time.

Even if we went beyond the unambiguous language of the trust, the facts here do not support plaintiff's position. Howell Sr., settlor and sole beneficiary for the trust, continued to pay trust fees until 1978, four years after the 20-year period. We find this action inconsistent with Heritage Bank's position that the trust had terminated in 1974. Judging from the action of Howell Sr., we can presume, as the trial court did, that he intended the trust would continue and his brother Joe Howell would take upon his death. Therefore, we conclude that the trust continued until 1988 when contingent beneficiary Joe Howell requested the Trustee Bank to convey legal title to the trust *res*.

## II

■ Heritage also contends that Howell Sr. "acquired equitable right to legal title to the subject premises when *** the Trustee Bank failed to sell the subject property within a reasonable time."

Under Illinois case law:

> "[T]he trustee holds legal and equitable title to the real estate subject to full powers of direction and control in the trust beneficiaries. The trustee has duties to deal with the real estate on direction of the beneficiaries, and at the end of the trust period specified to sell any property remaining in the trust and divide the proceeds among the beneficiaries." (*Quinn v. Pullman Trust & Savings Bank* (1968), 98 Ill. App. 2d 402, 404-05, 240 N.E.2d 791, 793.)

The trustee should perform these duties within a reasonable time. *Breen*, 411 Ill. at 212-13, 103 N.E.2d at 628-29; *Smith*, 387 Ill. at 226, 56 N.E.2d at 366.

As discussed above, the failure of the trustee to act in a reasonable time gives the beneficiaries the right to petition the court for action or a new trustee, but it does not terminate the trust. (*Breen*, 411 Ill. at 212-13, 103 N.E.2d at 628-29; see also *Altschuler v. Chicago City Bank & Trust Co.* (1942), 380 Ill. 137, 142, 43 N.E.2d 673, 676.) Furthermore, the time when interests vest in a beneficiary depends on rights defined in the terms of the trust, not on whether the trustees perform their duties in a reasonable time. *Wiener*, 11 Ill. 2d at 351-53, 143 N.E.2d at 226-28; *Eiche*, 84 Ill. App. 3d at 537-38, 406 N.E.2d at 212.

■ Heritage Bank cites these cases which support the beneficiary's equitable right to compel a trustee to act and argues that the

cases imply an equitable right to the trust *res*. Heritage does not, however, cite any cases that support such an implication. Furthermore, the *Breen* case is clear: beneficiaries to a real estate trust have "no right, either legal or equitable, to the real estate." *Breen*, 411 Ill. at 213, 103 N.E.2d at 629.

Heritage also argues that the trustee's failure to take any action to sell the premises for a period of 10 years was unreasonable as a matter of law. Therefore, Howell Sr. acquired "an equitable right to legal title to the subject premises." Assuming that failure to act within 10 years is unreasonable, we must consider what rights accrued to the trust beneficiaries as a result. The cases clearly support a right to compel the trustee to act. They also indicate that, if a termination date is specified by the trust, the property interests vest even if a beneficiary dies before the distribution by the trustee. None of the cases, however, support an equitable vesting of legal title when a land trust does not have a specific termination date. Once again, under *Breen* the beneficiaries have no legal or equitable rights to the real estate, only the right to compel the trustees to act. *Breen*, 411 Ill. at 213, 103 N.E.2d at 629.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.